**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF WEST VIRGINIA**

**PARKERSBURG**

CHARLES ELLIS,

       Movant,

v.                         **CASE NO. 6:06-cr-00037**
                                    **CASE NO. 6:10-cv-00041**

UNITED STATES OF AMERICA,

       Respondent.

<u>**PROPOSED FINDINGS AND RECOMMENDATION**</u>

    Pending before the Court is Movant's Motion to Vacate, Set Aside and Correct Sentence pursuant to 28 U.S.C. § 2255 (docket # 159, "Motion").  By Standing Order, this action was referred to the undersigned for submission of proposed findings and recommendation for disposition.

    Movant, Charles Ellis ("Defendant"), is serving a sentence of 324 months, upon his conviction by a jury of fourteen counts of offenses relating to unlawful transactions in firearms and two counts of obstruction of justice, in violation of 18 U.S.C. §§ 922(a)(1)(A), 924(a)(1)(D), 924(n), 922(a)(1)(A), 2(a), and 1512(b)(1), to be followed by a three-year term of supervised release.  (Judgment in a Criminal Case entered November 14, 2007, # 129.)  He was also sentenced to pay a special assessment of $1,600.00.  <u>Id.</u>

    Defendant's direct appeal was unsuccessful.  <u>United States v.</u>

Ellis, No. 07-5117, 301 Fed. App'x 271, 2008 WL 5071006 (4th Cir. Nov. 26, 2008), cert. denied, 129 S. Ct. 1023 (Jan. 21, 2009).

The § 2255 Motion was executed by Defendant's post-conviction attorney on January 10, 2010, and filed with the Clerk on January 14, 2010. Accordingly, Defendant's Motion was timely filed. At the Court's direction, the United States filed a response (# 166), and Defendant filed a reply (# 171).

Facts of the Case and Procedural History

The facts are taken from the Presentence Investigation Report ("PSR," # 134 [sealed]). It states that from December 9, 1999 through October 23, 2002, Defendant directed the straw purchase of sixteen firearms, all handguns, by four women. (PSR, ¶ 13, at 6.) He selected the weapon, persuaded one of the women to buy it, described the firearm to her, and provided the money. Id. ¶ 14. She would enter the store, complete the paperwork, buy the gun, leave the store and give the weapon to Defendant. Id. All four women confessed to an ATF agent that they bought the guns for Defendant. Id. ¶ 17, at 7. Two of the women made recorded telephone calls to Defendant in 2005, informing him that they had been served with subpoenas to a federal grand jury. Id. ¶ 18. Defendant encouraged the two women to give false information to the ATF agent and the grand jury.[1] Id. Additional information was provided by a witness who served time in prison with Defendant and

_____

[1] The recorded telephone calls were the bases for the charges of witness tampering.

spent time with Defendant after their release.  Id. ¶¶ 19-24, at 8-9.  This individual stated that Defendant bragged of buying firearms in Parkersburg for $50 to $200 each, transporting them to Boston, and selling them for $700 to $1,000 each.  Id. ¶ 20, at 8. Defendant told the individual that he was responsible for as many as 120 firearms in Boston.  Id. ¶ 22.

Defendant was indicted on February 22, 2006 (# 1) and arrested in Morgantown, West Virginia (PSR, ¶ 25, at 9).  Attorney Tim Carrico was appointed to represent Defendant (# 10).  Defendant was arraigned and detained.  (## 13-16.)  On May 17, 2006, attorney William H. Harding entered his appearance as retained counsel and Mr. Carrico's services were terminated.  (## 24-25, 27, 29.)  Trial was continued to August 15, 2006 (# 28).

On August 10, 2006, the presiding District Judge, the Hon. Joseph R. Goodwin, conducted a Rule 11 hearing at which Defendant entered guilty pleas to three counts of aiding and abetting the straw purchase of firearms.  (## 35-38.)  Sentencing was set for November 6, 2006 (# 42).  At the sentencing hearing, Defendant moved to withdraw his guilty plea.  (Tr. Hrng, # 55, at 6-7.)  An issue also arose concerning whether the witness tampering charges were subsequent offenses.  Id. at 10.

Judge Goodwin received a letter from Defendant's family which requested appointment of counsel (# 50).  Judge Goodwin conducted a hearing and appointed attorney Jacqueline Hallinan.  (## 51-54).

3

Ms. Hallinan moved to withdraw on February 16, 2007 (# 64); the motion was granted and attorney Herbert Hively was appointed (# 66). Mr. Hively filed a motion to withdraw Defendant's guilty pleas (# 67), and Judge Goodwin conducted a hearing on April 16, 2007 (# 72). Judge Goodwin denied the motion to withdraw the guilty pleas but rejected the plea agreement and ordered the guilty pleas withdrawn (# 75).

On June 5, 2007, a superseding indictment was returned (# 77) and Defendant was arraigned (# 88) with trial set for August 21, 2007 (# 89). On July 6, 2007, Defendant filed a motion to have his attorney removed and to proceed *pro se* (# 95). On July 26, 2007, Judge Goodwin conducted a hearing on the motion and denied it (# 99).

Defendant's jury trial began on August 21, 2007 and concluded on August 22, 2007, with the jury convicting him on Counts One through Sixteen and acquitting him on Counts Seventeen through Nineteen (# 115). Sentencing occurred on November 14, 2007 (## 124, 128-129). Mr. Hively filed a notice of appeal (# 131).

Although Mr. Hively was appointed to represent Defendant on appeal (# 135), he was permitted to withdraw, and attorney Barron Helgoe was appointed (# 146).

Grounds for Relief and Positions of the Parties

Defendant raises the following grounds for relief [spelling corrected]:

4

Ground one: Ineffective assistance of trial counsel
during trial and at sentencing.
      (1) Failure to object to prejudicial hearsay
      offered by case agent regarding interviews with key
      witnesses.
      (2) Failure to object to prejudicial testimony
      regarding Defendant's outstanding warrants.
      (3) Failure to properly impeach witness Gaskins
      with prior convictions.
      (4) Failure to properly investigate and set forth
      18 U.S.C. § 3553 factors at sentencing.
      (5) Failure to object to two-point increase for
      obstruction of justice at sentencing.
      (6) Failure to object to jury verdict form which
      failed to ensure jury unanimity where required.

Ground two: Ineffective assistance of appellate counsel.
      (1) Failure to argue unreasonableness of sentence
      based on 18 U.S.C. § 3553 factors.
      (2) Failure to challenge court's guideline
      assessment.
      (3) Failure to challenge admission of prejudicial
      hearsay.
      (4) Failure to challenge sufficiency of the
      evidence on all counts.
      (5) Failure to raise issue of improper jury verdict
      form.

Ground three: Intro[duction] of testimonial evidence in
violation of <u>Crawford</u> and Sixth Amendment.   The
introduction of the certificate which showed that the
defendant had no license to deal firearms was testimonial
and in violation of the 6th Amendment to the U.S.
Constitution.

Ground four: Jury verdict form violated due process.
Jury verdict form did not require jurors to specify which
of disjunctive elements of charges jury found.

Ground five: Sentence was substantively unreasonable
under 18 U.S.C. § 3533 [sic; 3553].  This issue was not
raised in a direct appeal or other post-conviction
proceedings due to the ineffectiveness of trial and
appellate counsel.

Ground six: Procedural defect in sentencing.   Court
improperly presumed guidelines to be reasonable.   This
issue was raised in the direct appeal only.   No hearing

5

was granted.

Ground seven: Violation of due process and right to indictment because there was insufficient evidence to support charge of witness intimidation where the alleged witnesses were never actually subpoenaed to testify at the grand jury and the indicted charge required proof of the obstruction of an ongoing proceeding.  This issue has never been raised due to the ineffectiveness of trial and appellate counsel.

Ground eight: Improper guidelines calculation where court increased base offense level for firearms charges based on convictions occurring after the date of offense, resulting in a substantial increase in guideline range. This issue has never been raised due to the ineffectiveness of trial and appellate counsel.

(Motion, # 159, at 5-6, 8-9, 15.)  Defendant did not file a brief with the § 2255 Motion; thus the grounds for relief are stated in a conclusory manner without explanation.  Obviously, this made it difficult for the United States to respond.  Defendant's reply provides more detail as to Defendant's claims.

The United States helpfully organized its response according to trial phase, sentencing phase, and appeal phase, and addressed Defendant's claims as to each.  (# 166, at 5-6.)  The government contends that Defendant was not denied effective assistance of counsel at any stage of the criminal proceedings.  Id. at 7-23. Defendant's reply addresses each of the grounds for relief and the government's response.  (# 171, at 5-23.)  The undersigned, having reviewed the transcript of Defendant's trial, will address each ground for relief in light of the well-settled law respecting effective assistance of counsel and collateral proceedings.

6

Analysis

An appeal is a direct attack on a conviction or sentence; a § 2255 motion is a collateral attack on a conviction or sentence. Motions under 28 U.S.C. § 2255 "will not be allowed to do service for an appeal." Sunal v. Large, 332 U.S. 174, 178 (1947). Based on this well-established principle, nonconstitutional claims that could have been raised on appeal, but were not, may not be asserted in collateral proceedings. Stone v. Powell, 428 U.S. 465, 478 n.10 (1976). The Fourth Circuit held, in United States v. Mikalajunas, 186 F.3d 490, 492-93 (4th Cir. 1999), that "[i]n order to collaterally attack a conviction or sentence based upon errors that could have been but were not pursued on direct appeal, the movant must show cause and actual prejudice resulting from the errors of which he complains or he must demonstrate that a miscarriage of justice would result from the refusal of the court to entertain the collateral attack."

To raise constitutionally-based grounds for relief in a § 2255 motion, a defendant has a "significantly higher hurdle than would exist on direct appeal." United States v. Frady, 456 U.S. 152, 166 (1982). He must meet the two-part "cause and actual prejudice" test. Id. at 167-68.

> To obtain collateral relief based on trial errors to which no contemporaneous objection was made, a convicted defendant must show both (1) "cause" excusing his double procedural default, and (2) "actual prejudice" resulting from the errors of which he complains.

*Id.* at 168.  If the defendant fails to meet the actual prejudice prong of the test, it is not necessary to address "cause."  *Id.* Cause for a procedural default can arise only from "something external to the defense," such as the novelty of the claim or ineffective assistance of counsel.  *Mikalajunas*, 186 F.3d at 493.

The Supreme Court addressed the right to effective assistance of counsel in *Strickland v. Washington*, 466 U.S. 668 (1984), in which the Court adopted a two-pronged test.  The first prong is competence; movant must show that the representation fell below an objective standard of reasonableness.  *Id.* at 687-91.  There is a strong presumption that the conduct of counsel was in the wide range of what is considered reasonable professional assistance, and a reviewing court must be highly deferential in scrutinizing the performance of counsel.  *Id.* at 688-89.

> In order to meet the first prong, movant must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment.  The court must then determine whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance. . . [C]ounsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment.

*Id.* at 690.

The second prong is prejudice; "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to

undermine confidence in the outcome." <u>Id.</u> at 694.  The court may determine the prejudice prong prior to considering the competency prong if it is easier to dispose of the claim on the ground of lack of prejudice.  <u>Id.</u> at 697.

### Trial Phase

**Ground one, first alleged error: Failure to object to prejudicial hearsay offered by case agent regarding interviews with key witnesses.**

The government's case agent was ATF Special Agent Wesley Brent Price.  In Defendant's reply, he argues:

> Allowing Agent Price to relay the statements of Ms. Heath and Ms. Adams severely prejudiced the Petitioner by allowing Agent Price to bolster the credibility of [these] two key witnesses.  It was especially prejudicial considering the ambiguity and motive for fabrication, namely to avoid prosecution, exhibited by Ms. Heath in her cross-examination.

(# 171, at 5.)  Defendant does not identify the specific testimony by Agent Price which was prejudicial.

Ms. Heath was the second witness of the trial; she testified that she was the straw purchaser of eight firearms for Defendant during the period October 11, 2000 through October 23, 2002.  (Tr. Trial, # 139-1, at 73-79.)[2]  Ms. Heath stated that she pled guilty in this Court to the felony of making a false statement on the eight ATF Forms 4473.  <u>Id.</u> at 79.  Plainly, Ms. Heath did not "avoid prosecution," as asserted by Defendant.

---

[2]  Each transcript page has two page numbers: one assigned by the court reporter; one assigned by the Clerk's CM/ECF system.  The index prepared by the court reporter uses the page numbers she assigned.  The Court will use the court reporter's page numbers.

Agent Price's testimony explained to the jury how ATF traces firearms and how the investigation was conducted. He stated that he heard the name of Charles Ellis for the first time when he interviewed Ms. Heath on June 22, 2005. (Tr. Trial, # 139-2, at 184.) He testified that Ms. Heath told him that she bought the firearms for Charles Ellis. Id. at 185. Agent Price did not repeat Ms. Heath's testimony; he simply related the steps of the investigation. Id. at 186-87. There was nothing objectionable about his testimony.

Ms. Adams testified that she was the straw purchaser of five firearms for Defendant during the period June 30, 2002 through September 26, 2002. (Tr. Trial, # 139-1, at 101-04.) Agent Price told the jury that he interviewed Ms. Adams, that she admitted that she had purchased firearms and that she had provided them to Defendant. (Tr. Trial, # 139-2, at 189.) Otherwise he did not repeat any of her testimony. Again, there was nothing objectionable about his testimony.

**Ground one, second alleged error: Failure to object to prejudicial testimony regarding defendant's outstanding warrants.**

Defendant's reply contends that Mr. Hively was ineffective when he failed to object to testimony by Massachusetts State Trooper Kevin Maple that he arrested Defendant on three warrants issued by local courts. (# 171, at 6.) He argues that the testimony was "unnecessary, inflammatory, and impermissibly hinted at Petitioner's propensity to commit crimes." Id.

10

The purpose of Trooper Maple's testimony was to establish that on December 18, 1999, a firearm recovered from the trunk of a vehicle driven by Defendant was the same firearm which was the subject of a straw purchase in Parkersburg by Deanna Mathis on December 8, 1999.  (Tr. Trial, # 140, at 11-13.)  Trooper Maple briefly explained to the jury why he pulled Defendant over (speeding), why he arrested him ("three warrants out of local courts"), and why he conducted an inventory search of the vehicle and found the firearm while waiting for a tow truck ("standard procedure").  Id. at 10.  Trooper Maple did not state what offenses were reflected on the warrants, which were not mentioned again. Id.  Mr. Hively's decision not to object was objectively reasonable.

**Ground one, third alleged error: Failure to properly impeach witness Gaskins with prior convictions.**

Witness Delano Gaskins was subpoenaed by the United States to testify concerning statements made by Defendant while the two were incarcerated together and while they lived in the same housing complex after release on parole.  Mr. Gaskins' reluctance to testify and failures of recall were the subject of several bench conferences.  Defendant's reply concedes that defense counsel mentioned one of Gaskins' prior convictions, armed/aggravated assault [sic; robbery], but criticizes him for not cross-examining Gaskins on "numerous other charges . . . such as his prior drug, grand larceny, credit card fraud and conspiracy to commit armed

11

robbery charges."   (# 171, at 6-7.)   He argues that Defendant was prejudiced because Gaskins was not sufficiently impeached.   Id. at 7.

Mr. Hively cross-examined Delano Gaskins regarding his use of aliases which were associated with his prior felonies.  (Tr. Trial, # 139-2, at 156-57.)  He noted his conviction for armed robbery. Id. at 157.   He explored his receipt of money from ATF.   Id. at 157-59.   Gaskins admitted that his relationship with his parole officer was "terrible," because of his behavior which included use of cocaine and missed meetings.   Id. at 160.   Mr. Hively established that the parole officer did not take steps to revoke his parole when Gaskins was providing information to ATF.   Id. at 162-65.  Mr. Hively's cross-examination of Delano Gaskins was well within the wide range of reasonable professional assistance.

**Ground one, sixth alleged error: Failure to object to jury verdict form which failed to ensure jury unanimity where required; Ground four: Jury verdict form.**

Defendant's reply argues that the jury verdict form as to the 18 U.S.C. § 924(a)(1)(A) [sic; § 922(a)(1)(A)] charges (Counts One, Seven and Seventeen) was defective.   Defendant was acquitted of Count Seventeen, so it will not be addressed.   Count One charged that from in or about December 1999 to in or about November 2002, Defendant "willfully engaging in the business of dealing in firearms without a license, and in the course of such business shipped, transported, and received firearms in interstate and

12

foreign commerce." (Superseding Indictment, # 77, at 1-2.) Count Seven charged that in or about September 2002, Defendant traveled from Massachusetts to Parkersburg, West Virginia and "did knowingly intend to engage in the business of dealing in firearms without a license, and that, in the course of such business, to ship, transport, and receive firearms in interstate commerce." Id. at 8.

The jury verdict form as to these two counts read as follows:

1. As to the charge of Count One of the Indictment, Wilfully Engaging in the Business of Dealing in Firearms without a License, we the jury find the defendant, Charles Ellis: _____ Guilty _____ Not Guilty

* * *

7. As to the charge of Count Seven of the Indictment, Knowingly Intending to Engage in the Interstate Business of Dealing in Firearms without a License, we the jury find the defendant, Charles Ellis:
_____ Guilty _____ Not Guilty

(# 115, at 1-2.)

The jury instructions included the following:

You will note that certain counts of the superseding indictment – and I'll send the indictment back to your jury room – read in the conjunctive. For example, Counts One and Seventeen charge the defendant, Charles Ellis, with willfully engaging in the business of dealing in firearms without a license and, in the course of such business, shipping, transporting, and receiving firearms in interstate and foreign commerce.

However, it is not necessary for the United States to prove beyond a reasonable doubt that the defendant actually shipped, transported, and received in interstate and foreign commerce.

Rather, the United States has charged different means of violating. You only need find a reasonable doubt – need to find beyond a reasonable doubt that the

defendant committed one of these acts, shipped or transported or received in interstate commerce, even though they're stated in the conjunctive.

That is, the United States may satisfy its burden of proof here by establishing that the defendant either shipped, transported, or received firearms in interstate or foreign commerce as charged.

However, all 12 jurors must agree on the same act that they find was committed, either shipping, transporting or receiving.

(Tr. Trial, # 140, at 85-86.)

With respect to Count Seven, the jury was instructed as follows:

To sustain its burden of proof in connection with Count Seven, the Government must prove beyond a reasonable doubt that the defendant, Charles Ellis, travelled from one state to another; in this case, from Massachusetts to West Virginia.

Two, they must prove that Mr. Ellis acquired or attempted to acquire a firearm in West Virginia.

Three, they must prove beyond a reasonable doubt that the defendant so travelled or acquired or attempted to acquire a firearm knowingly and willfully, for the purpose of engaging in the business of dealing in firearms without a license as previously defined.

Id. at 100.

It is plain that the jury was instructed that they must agree on the same act committed by Defendant. Mr. Hively was correct not to object to the jury verdict form.

**Ground three: <u>Crawford</u>: Certificate of no license to deal firearms.**

The United States offered into evidence Government Exhibit 19, a self-authenticating document which established that Defendant did

14

not have a federal license to sell firearms during the period January 1, 1999 through January 1, 2003.  (Tr. Trial, # 139-2, at 183-84; Gov't Ex. 19, # 119-4, at 17-18.)  Mr. Hively did not object and Exhibit 19 was admitted.  Id. at 184.  Defendant's reply argues that Defendant's Sixth Amendment right to confront the witnesses against him, as enunciated by Crawford v. Washington, 541 U.S. 36, 53-54 (2004), was violated by the admission of Exhibit 19. (# 171, at 14-15.)  Defendant specifies that he does not rely on Melendez-Diaz v. Massachusetts, 129 S. Ct. 2527 (2009), and concedes that Melendez-Diaz, which held that chemists' affidavits regarding the identification of controlled substances are testimonial, does not apply retroactively. (# 171, at 14.)[3]

Government Exhibit 19 is a two-page document fastened together by a ribbon which is adhered to the first page with a seal.  (# 119-4, at 17-18.)  The first page, addressed "To Whom It May Concern," and signed by Iris N. Gremillion, Acting Chief of the Federal Firearms Licensing Center, certifies that Shaun M. Griffith has legal custody of the Bureau of Alcohol, Tobacco and Firearms' records pertaining to firearms licenses to engage in business as

---

[3]   In Melendez-Diaz, the majority opinion discussed "cases in which the prosecution sought to admit into evidence a clerk's certificate attesting to the fact that the clerk had searched for a particular relevant record and failed to find it.  Like the testimony of the analysts in this case, the clerk's statement would serve as substantive evidence against the defendant whose guilt depended on the nonexistence of the record for which the clerk searched." 129 S. Ct. at 2539.  The opinion noted that "the clerk was nonethess subject to confrontation." Id.  Ultimately, the Court held that "the analysts' statements here – prepared specifically for use at petitioner's trial – were testimony against petitioner, and the analysts were subject to confrontation under the Sixth Amendment.  Id. at 2540.

firearms dealers and attests that Shaun M. Griffith's signature on the second page is genuine. Id. at 1. The second page, addressed "To Whom It May Concern," and signed by Shaun M. Griffith, Supervisor, Federal Firearms Licensing Center, certifies that he has legal custody of the records, and that he "made a diligent search of said records and that no record or entry was found therein with respect to the application for or issuance of a firearms license to Charles Irvin Ellis . . . for the period of January 1, 1999 through January 1, 2003." Id. at 2. The statements in Exhibit 19 are not sworn and thus are not affidavits; they are "certificates."

The United States and Defendant stipulated that "Charles Ellis is a convicted felon and has not had his rights restored to possess a firearm as alleged in the superseding indictment." (Tr. Trial, # 140, at 28.) The jury was not told the date on which Defendant became a convicted felon. The PSR reflects that Defendant was convicted of a felony for the first time in the Circuit Court of Wood County, West Virginia on March 14, 2003. (PSR, # 134, ¶ 53, at 13.) ATF Special Agent Price testified regarding the process of applying for a federal firearms license. (Tr. Trial, # 139-2, at 182-83.) He stated that someone who is a convicted felon cannot be a federal firearms licensee. Id. at 183.

Thus the evidence before the jury as to Count One's essential element that Defendant lacked a federal firearms license but

nonetheless engaged in the business of dealing in firearms from December 1999 to November 2002, was solely Exhibit 19.  The same is true as to Count Seven (engaging in the business of dealing in firearms without a license in September 2002).

Defendant relies on Rule 52(b), Fed. R. Crim. P., which provides that "[a] plain error that affects substantial rights may be considered even though it was not brought to the court's attention." (# 171, at 15.)  Citing United States v. Olano, 507 U.S. 725, 732-34 (1993), Defendant contends that his substantial rights were affected because the absence of a license was an essential element of Counts One, Seven and Seventeen.  Id.

The United States contends that it was never an issue at trial that Defendant was a licensed firearms dealer.  (# 166, at 13.) "He cannot now contend he was prejudiced by not asserting an objection regarding a trivial issue at trial." Id.

The familiar test of Olano is that (1) there must be an "error," (2) the error must be "plain" which means "clear" or "obvious," and (3) the error must affect substantial rights, which means that the error must be prejudicial, affecting the outcome of the proceedings.  507 U.S. at 732.  The Court reaffirmed the standard enunciated in United States v. Atkinson, 297 U.S. 157, 160 (1936), that an error to which there has not been an objection should be noticed if the errors "seriously affect the fairness, integrity, or public reputation of judicial proceedings."

Defendant's reliance on Olano is misplaced; that case, and Rule 52(b), Fed. R. Crim. P., apply to direct appeals, not to collateral proceedings.  The government's position that this is a "trivial issue" is likewise in error; whether Defendant had a federal firearms license was an essential element of Counts One and Seven.

As set forth above, at pages 7 and 8, a defendant who is raising a constitutionally-based ground for relief must meet the "cause and actual prejudice" test of United States v. Frady, 456 U.S. at 168.  If a defendant cannot show prejudice, it is not necessary to address cause.  Id.  The Supreme Court explained that to show "prejudice," a defendant "must shoulder the burden of showing, not merely that the errors at his trial created a *possibility* of prejudice, but that they worked to his *actual* and substantial disadvantage, infecting his entire trial with error of constitutional dimensions."  Id. at 170.  [Emphasis in the original.]  The Court noted that it would be a different matter if there were affirmative evidence indicating that Frady had been convicted wrongfully of a crime of which he was innocent.  Id. at 171.

Defendant cannot show that he was prejudiced by the admission of Exhibit 19.  Moreover, there was never the slightest suggestion that Defendant was actually innocent of the element of failing to apply for and receive a federal firearms license.  Although he was

18

convicted of committing Counts One and Seven, upon examination of the PSR (# 134) and the transcript of the sentencing hearing (# 141), it is apparent that Defendant's convictions on Counts One and Seven had no effect whatsoever on his sentence.  All the offenses were grouped; his offense level was high (39) due to two of the offenses occurring after he had been convicted of two felonies of crimes of violence or controlled substance offenses, the involvement of 120 guns, the obliteration of a serial number on one firearm, the recovery of some of the firearms at crime scenes, including a murder, Defendant's role in the offense, and his witness tampering.  (# 134, ¶¶ 36-44.)  His Criminal History Category was IV, thus exposing him to an advisory guideline range of 360 to 1140 months.  (Tr. Sent. Hrng., # 141, at 18.)  If Counts One and Seven were dismissed with prejudice, Defendant's sentence on the remaining fourteen counts of conviction would not change by one day.  Having failed to show actual prejudice, it is unnecessary to address whether there was "cause" for the double procedural default.

**Ground seven: Sufficiency of evidence as to witness tampering.**

Defendant's reply contends that his right to due process was violated because there was insufficient evidence that Defendant obstructed an "ongoing proceeding."  (# 171, at 21.)  He asserts that the two witnesses never actually testified at the grand jury, "nor was there any evidence that there was any intention that they

be called at the grand jury."  Id.

The United States' response points to Special Agent Price's testimony that there was an on-going grand jury investigation when the recorded telephone calls were made, and that both witnesses testified that they were each given a target letter and a grand jury subpoena.  (# 166, at 14.)

Count Fifteen charges that on or about June 29, 2005, the "First Known Person [Dana Heath] was served with a Grand Jury subpoena directing her to testify before a Federal Grand Jury in Charleston, West Virginia, and to bring documents with her regarding firearms transactions."  (Superseding indictment, # 77, at 16.)  At trial, Assistant United States Attorney Loew asked her, "Were you given a subpoena asking you to come testify before the grand jury in Charleston, West Virginia?"  (Tr. Trial, # 139-1, at 80.)  She responded, "Yes."  Id.  On cross-examination, Mr. Hively asked Ms. Heath if, when she called Defendant, she had a subpoena. Id. at 84.  She responded, "Yes."  Id. at 85.  She later stated that she did not go to the grand jury.  Id. at 87.

Count Sixteen charges that on or about November 17, 2005, the "Third Known Person [Kristine Adams] was served with a letter (the 'target letter') informing her that she was the target of a Federal Grand Jury investigation and allowing her to testify before a Federal Grand Jury in Charleston, West Virginia."  (Superseding indictment, # 77, at 17.)  At trial, Assistant United States

Attorney Webb asked her, "Did they [federal agents] provide you with a subpoena and a letter, a target letter?" (Tr. Trial, # 139-1, at 108.) She answered, "A target letter." Id. Defendant was indicted by the federal grand jury three months later (# 1).

Title 18, United States Code, Section 1512(b)(1) makes it a felony to intimidate, threaten, or corruptly persuade another person, or attempt to do so, with intent to influence, delay or prevent the testimony of any person "in an official proceeding." There was more than sufficient evidence presented to the jury of an "official proceeding;" the statute does not require that the witness actually appear and testify at the official proceeding.

Defendant has failed to show "cause" to excuse his double procedural default of this issue and actual prejudice arising out of the quantum of evidence presented at trial establishing the existence of an "official proceeding". His attorneys' performance was well within the broad range of reasonable professional assistance.

### Sentencing Phase

### Ground one, fourth alleged error: Failure to argue § 3553 factors

Defendant's reply acknowledges that Mr. Hively addressed the 18 U.S.C. § 3553 factors at sentencing, but argues that "a more exhaustive listing of § 3553 factors was imperative, especially because of the long sentence that the Petitioner faced." (# 171, at 8.) Noting that Defendant "made an impassioned statement" on

his own behalf, the reply contends that Mr. Hively should have filed an "exhaustive" Sentencing Memorandum.  Id.

The United States points out that Mr. Hively filed a sentencing memorandum which addressed the § 3553 factors (# 127 at 4-5), and spoke on Defendant's behalf at sentencing.  (# 166, at 14-15.)

Judge Goodwin addressed the § 3553 factors, departed below the bottom end of the advisory guideline range (360 months) and imposed a sentence of 324 months.  (Tr. Sent. Hrng, # 141, at 18, 35-38.) Mr. Hively's representation of Defendant at sentencing was well within the broad range of reasonable professional assistance.

**Ground one, fifth alleged error: Failure to object to two-level increase for obstruction of justice**
**Ground eight: Improper guideline calculation based on convictions occurring after the date of offense**

These grounds for relief are based on the dates of the offenses for which Defendant was convicted.  The counts of conviction were charged as having occurred on the following dates:

```
One [dealing without a license]      Dec. 1999-Nov. 2002
Two [straw purchase]                 Jan. 2002
Three [straw purchase]               Jan. 2002
Four [straw purchase]                Feb. 2002
Five [straw purchase]                Feb. 2002
Six [straw purchase]                 June 2002
Seven [dealing without a license]    Sept. 2002
Eight [straw purchase]               Sept. 2002
Nine [straw purchase]                Sept. 2002
Ten [straw purchase]                 Sept. 2002
Eleven [straw purchase]              Sept. 2002
Twelve [straw purchase]              Sept. 2002
Thirteen [straw purchase]            Sept. 2002
Fourteen [straw purchase]            Oct. 2002
Fifteen [witness tampering]          June, 2005
```

Sixteen [witness tampering]        Nov. 2005
(Superseding indictment, # 77.)

According to the PSR, Defendant committed two unlawful assaults on November 11, 2001, for which he was convicted on March 14, 2003; on May 20, 2003, he was sentenced to 1-5 years on each count, with the sentences to run consecutively.  (PSR, ¶ 53, at 13.)  On October 26, 2002, Defendant was arrested for possession of a controlled substance and told police that his name was "Casey C. Hargrove."  Id. ¶ 54, at 15.  On August 4, 2003, he pled guilty to possession with intent to deliver and to forgery of a public record; on October 27, 2003, he was sentenced to 1-5 years on the drug charge and 2-10 years on the forgery charge, with the sentences to run concurrently with the sentences on the unlawful assaults.  Id.  Defendant was released on parole on June 16, 2005.  Id., at 14.

The PSR, ¶ 36, at 11, set Defendant's Base Offense Level pursuant to U.S.S.G. § 2K2.1(a)(2) [Nov. 1, 2005 edition], at level 24, because "the defendant committed any part of the instant offense subsequent to sustaining at least two felony convictions of either a crime of violence or a controlled substance offense."  The two witness tampering offenses, committed in 2005, were thus deemed to be part of the firearms offenses.  The PSR also applied a two-level upward adjustment for obstruction of justice on the basis of the conduct which resulted in the witness tampering convictions.

Id., ¶ 44, at 12.

Defendant argues that the witness tampering charges were not proved beyond a reasonable doubt (or even by a preponderance of the evidence) and should not have been used to increase the Base Offense Level. (# 171, at 22-23.) Defendant also criticizes Mr. Hively for failing to object to a two-level increase for obstruction of justice. Id. at 8-9.

Mr. Hively filed a sentencing memorandum in which he argued for a Base Offense Level of 12, with one upward adjustment of four levels for the number of firearms. (# 127, at 1-2.) He objected to increases in offense levels otherwise, but affirmatively stated he did not object to the two-level increase for obstruction of justice. Id. at 2-3.

At sentencing, Mr. Hively asserted that the Base Offense Level should be 12, noting that "Mr. Ellis's state convictions happened after the firearm convictions, and there is an enhancement already for obstruction of justice in the pre-sentence report." (Tr. Sent. Hrng, # 141, at 5.)

The United States responded that the definitions of "instant offense" [USSG § 1B1.1, comment.(n.1H)] and "relevant conduct" [USSG § 1B1.3(a)(1)] require a finding that the witness tampering was part of the firearms offenses ("all acts and omissions committed . . . by the defendant . . . that occurred . . . in the course of attempting to avoid detection or responsibility for that

offense").  Id. at 6.

Judge Goodwin overruled Mr. Hively's objections, stating, "I've taken a fairly long look at this.  I'm persuaded that the definition of "offense" is broad within the guidelines and encompasses the conduct which comprised the obstruction of justice counts."  (Tr. Sent. Hrng., # 141 at 7.)

The two-level upward adjustment for obstruction of justice was based on USSG § 3C1.1, which reads as follows:

> If (A) the defendant willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice during the course of the investigation, prosecution, or sentencing of the instant offense of conviction, and (B) the obstructive conduct related to (i) the defendant's offense of conviction and any relevant conduct; or (ii) a closely related offense, increase the offense level by **2** levels.

The Application Notes provide a "non-exhaustive list of examples of the types of conduct to which this adjustment applies":

> (a) threatening, intimidating, or otherwise unlawfully influencing a co-defendant, witness, or juror, directly or indirectly, or attempting to do so;
> (b) committing, suborning, or attempting to suborn perjury;
>                          * * *

USSG § 3C1.1, comment. (n.4).  Application Note 8 is directly on point:

> If the defendant is convicted both of an obstruction offense . . . and an underlying offense (the offense with respect to which the obstructive conduct occurred), the count for the obstruction offense will be grouped with the count for the underlying offense under subsection (c) of § 3D1.2 (Groups of Closely Related Counts).  The offense level for that group of closely related counts will be the offense level for the underlying offense

increased by the 2-level adjustment specified by this
section, or the offense level for the obstruction
offense, whichever is greater.

Id. (n.8).  Thus Defendant's firearms convictions were grouped with

his witness tampering convictions; the firearms offense level was

used because it was greater; and the two-level increase for

obstruction of justice was applied.  Mr. Hively was correct not to

object to the obstruction of justice adjustment.  The guidelines

were calculated correctly.

**Grounds five and six: Reasonableness of sentence (substantively and procedurally)**

On direct appeal, Defendant challenged his 324-month sentence

as procedurally unreasonable.  The Fourth Circuit ruled as follows:

Ellis argues that his sentence is procedurally
unreasonable because the district court imposed it prior
to the Supreme Court's decision in *Gall v. United States*,
— U.S. — 128 S. Ct. 586, 597, 169 L. Ed.2d 445 (2007),
and that the court did not fully consider whether a
sentence closer to the statutory minimums on each count,
which would require a variance far below the low end of
the Guidelines range, was reasonable.  Ellis contends
that the court abused its discretion by presuming
reasonableness of the Guidelines range.

A sentence is reviewed for abuse of discretion,
*Gall*, 128 S. Ct. at 597, with the review encompassing
both procedural soundness and substantive reasonableness.
*Id.*  In *Gall* and in *Kimbrough v. United States*, — U.S. —,
129 S. Ct. 558, 169 L. Ed.2d 481 (2007), the Supreme
Court clarified the sentencing judge's authority to
impose a sentence outside the Guidelines range "based
solely on the judge's view that the Guidelines range
fails properly to reflect § 3553(a) considerations."
*Kimbrough*, 128 S. Ct. at 575 (internal quotation and
citation omitted).

Ellis was sentenced before *Gall* and *Kimbrough* were
decided, so the district court did not have the benefit

26

of those decisions. Either treating the Guidelines as mandatory or failing to consider the § 3553(a) factors adequately would constitute a "significant procedural error." *Gall*, 128 S. Ct. at 597. However, in this case, after stating its belief that the Guidelines range was too severe, the court went on to impose a sentence three years below the 360-month low end of the Guidelines range. Nothing in the record indicates that the court believed that it could not vary downward. Although Ellis claims that the court erroneously applied a presumption of reasonableness to the Guidelines range, it varied downward and there is no indication that the court was unaware of the applicable statutory minimum sentences. Finally, the court considered the § 3553(a) factors in fashioning the sentence. We therefore find that Ellis has not demonstrated procedural error.

Ellis, 301 Fed. App'x at 274, 2008 WL 5071006 **3.

In ground six, Defendant claims that his sentence was procedurally unreasonable, the exact issue which was raised on direct appeal. Absent an intervening change in the law, issues which were litigated on direct appeal may not be raised again in collateral proceedings. Boeckenhaupt v. United States, 537 F.2d 1182 (4th Cir. 1976). Thus this ground for relief lacks merit.

With respect to ground five, Defendant's reply asserts that his sentence was substantively unreasonable when considered in the light of the § 3553(a) factors. (# 171, at 16-17.) He argues that "the sentencing court adhered to the guidelines as if Booker[4] never existed, and sentenced Petitioner to a much longer time period than he would have received if the court had made an individualized assessment taking into account the particular facts of this case."

---

[4] United States v. Booker, 543 U.S. 220 (2005).

Id. at 17-18.   Defendant repeated his contention that "the court simply adhered to the sentencing guidelines in violation of the Supreme Court's instructions in Gall.   Id. at 19.   Defendant then acknowledges the three-year downward variance and asserts that it "clearly implies that the sentencing court did not treat the Guidelines as advisory."   Id. at 20.

The United States points out that the Fourth Circuit applied the § 3553(a) factors and varied from a true Guidelines sentence by three years.   (# 166, at 18.)

Judge Goodwin addressed Defendant and explained the reasoning for the sentence imposed:

> I subtracted the three years because I believe in rehabilitation, and I believe that while it's going to be a very long time before you're eligible to get out, you deserve and have the opportunity to have some life.
>
> You are intelligent.  That's a characteristic that I've noted.   You come from a fine family.   That's a characteristic that I have noted.   I've taken into account the punishment that you've previously received on related matters.  I've taken into account your age, which is a discouraged factor under the guidelines.  I've taken into account the needs for deterrence from the kind of conduct that you've engaged in.   And that's how I've arrived at the sentence that I have considering all the 3553(a) factors, including the need for deterrence.
>
> West Virginia is a source state for firearms because particularly handguns can be bought cheaply here, transported to cities like Boston and New York, and sold for illegal and violent purposes.   One of the handguns you sold was used to murder somebody.   And I'm fully cognizant of that.
>
> I think 27 years is a sufficient sentence for the conduct that you engaged in, and I've considered all the factors in arriving at that opinion.

You were, as you say, young when you committed the bulk of your acts.  A term of 27 years will provide a window for you to attempt to do some good deeds in your older years.

The letters I received from your family portray a confident young man with strong family support.  You didn't come from bad circumstances, a broken home, or a hard beginning like many.  And more should have been expected of you than what you've delivered.

It's only because I believe you have the ability to be rehabilitated that I have departed those three years.  And it may not seem like a lot out of 30 years, but at the end it will seem like a lot.

(Tr. Sent. Hrng., # 141, at 37-38.)  It is apparent that Judge Goodwin treated the guidelines as advisory and faithfully applied the § 3553(a) factors in reaching his sentencing decision.

## Appeal Phase

### Ground two, first and second alleged errors relating to sentence

Defendant's reply asserts that Defendant was denied effective assistance of counsel on appeal because Mr. Helgoe failed to argue that the sentence was substantively unreasonable and that the guidelines were improperly calculated.  (# 171, at 11-12.)  The undersigned addressed these alleged errors of counsel with respect to Mr. Hively's representation of Defendant at the sentencing hearing (pages 22 through 28) and has found no error.  Thus it was not ineffective assistance of counsel to fail to raise these matters on appeal.

### Ground two, third and fourth alleged errors relating to evidence

The undersigned addressed the third alleged error of counsel

with respect to Mr. Hively's representation of Defendant at trial (pages 9 through 10 (alleged hearsay testimony of Special Agent Price)) and found no error.  It is not necessary to address this further.

The fourth alleged error by appellate counsel is that Defendant claims, in a rather conclusory fashion, that Mr. Helgoe should have argued insufficiency of the evidence as to all counts. (# 171, at 13.)  It is difficult to imagine that the United States could have presented more evidence on the two counts of witness tampering because the government presented the recorded telephone calls of Defendant committing the offenses.

Defendant further declares that as to the straw purchaser charges, "there was likewise no evidence that he knew that the purchasers were going to lie on the ATF Form."  Id.  Mr. Hively cross-examined each of the straw purchasers as to whether Defendant had told them to lie on the ATF Form.  Each of them testified that he had not done so.  (Tr. Trial, # 139-1, at 69-10 [Mathis]; at 87 [Heath]; at 95 [Esson]; at 113 [Adams].)  The ATF forms admitted into evidence contain a clear statement that the firearm transaction would not take place if the firearm were not being purchased by the person signing the ATF Form.  (# 119, Government Exhibits 1 through 9, 11 through 17); it did not matter whether Defendant told the purchaser to lie on the form.  There was no issue for Mr. Helgoe to raise on appeal with respect to the

30

overwhelming evidence as to the straw purchases.

**Ground two, fifth alleged error regarding verdict form.**

The undersigned addressed the fifth alleged error of counsel with respect to Mr. Hively's representation of Defendant at trial (pages 12 through 14 (allegedly improper jury verdict form)) and found no error.  It is not necessary to address this further.

### Proposed Findings and Recommendation

After a thorough review of each of Defendant's grounds for relief, the undersigned proposes that the presiding District Judge **FIND** that Defendant was not denied effective assistance of trial or appellate counsel and that Defendant has failed to show cause and actual prejudice as to any of the other errors which he claims.

For the foregoing reasons, it is respectfully **RECOMMENDED** that the presiding District Judge deny Defendant's § 2255 Motion.

The parties are notified that this Proposed Findings and Recommendation is hereby **FILED**, and a copy will be submitted to the Honorable Thomas E. Johnston, United States District Judge. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), Rule 8(b) of the Rules Governing Proceedings in the United States District Courts Under Section 2255 of Title 28, United States Code, and Rule 45(c) of the Federal Rules of Criminal Procedure, the parties shall have fourteen days (filing of objections) and then three days (mailing/service), from the date of filing this Proposed Findings and Recommendation within which to

file with the Clerk of this Court, specific written objections, identifying the portions of the Proposed Findings and Recommendation to which objection is made, and the basis of such objection. Extension of this time period may be granted for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of de novo review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. Snyder v. Ridenour, 889 F.2d 1363 (4th Cir. 1989); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984). Copies of such objections shall be served on opposing parties and Judge Johnston.

The Clerk is directed to file this Proposed Findings and Recommendation, to mail a copy of the same to Movant, and to transmit it to counsel of record.


January 4, 2011
    Date

Mary E. Stanley
United States Magistrate Judge